UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

───────────────────────────

№ 20-CV-1406 (EK) (RER)

───────────────────────────

COPPERWOOD CAPITAL LLC,

Plaintiff,

VERSUS

JAG STAFFING AND CONSULTING SERVICES, INC.,

Defendant.

───────────────────────────

**Report & Recommendation**

───────────────────────────

**To the Honorable Eric R. Komitee,
United States District Judge**

**RAMON E. REYES, JR., U.S.M.J.:**

Copperwood Capital LLC ("Copperwood" or "Plaintiff") brings this action against JAG Staffing and Consulting, Inc. ("JAG" or "Defendant") pursuant to 28 U.S.C. § 1332. (Dkt. No. 1 ("Compl.") ¶ 4). Copperwood seeks to recover from JAG $334,389 due on several invoices for services non-party EVO 360 LLC ("EVO") provided to JAG, who assigned those accounts receivable to Copperwood. (*Id.* ¶¶ 9–15). Copperwood raises claims for breach of contract, unjust enrichment, and under several provisions of the Uniform Commercial Code ("UCC"). (*Id.* ¶¶ 16–43). The Clerk of the Court entered JAG's default after it failed to answer or otherwise defend against this action, and Your Honor referred to me for a report and recommendation Plaintiff's subsequent motion for default judgment. (Dkt. No. 8; Dkt. Entry dated 7/20/2020).

For the reasons set forth herein, I respectfully recommend that Copperwood's motion for default judgment be granted in part and that it be awarded $314,989 in damages, $77.67 per diem in prejudgment interest from October 24, 2019 to the date of judgment, $400 in costs, and post-judgment interest pursuant to 28 U.S.C. § 1961.

## BACKGROUND

As required by Rule 55 of the Federal Rules of Civil Procedure, the following facts are accepted as true:

Copperwood is a Texas limited liability company with its principal place of business in Corpus Christi, Texas. (Compl. ¶ 2). JAG is a New York corporation with its principal place of business in Staten Island, New York.

1

(*Id.* ¶ 3). Copperwood "is in the factoring business." (*Id.* ¶ 7). Factoring is a type of accounts receivable financing. (*Id.*). Typically, a factor (here, Copperwood) purchases accounts receivable at a discount from the invoice amount, and advances funds or credit to the seller (here, EVO) against the accounts receivable, which are assigned to the factor. 32 AM. JUR. 2d *Factors and Commission Merchants* § 2. In return for the right to collect on the accounts receivable and for the discounted purchase price, the factor typically assumes the risk of loss in the event that the account debtors (here, JAG) are unable to pay. *Id.* "As owner of the account, the factor is typically entitled to receive payment directly from the account debtor, and to undertake collection activities." *Dessert Beauty, Inc. v. Platinum Funding Corp.*, 519 F. Supp. 2d 410, 414 (S.D.N.Y. 2007) (citing CHARLES J. WOELFEL, ENCYCLOPEDIA OF BANKING & FINANCE 370 (10th ed. 1994)).

On October 23, 2018, Copperwood entered into a Master Factoring and Security Agreement ("Receivables Sale Agreement") with EVO, through which EVO "sold and assigned to Copperwood all invoices and amounts due and owing to EVO from [among others] JAG Staffing." (Compl. ¶¶ 10–11; Dkt. No. 9-3 ("Ex. A.")). On that same date, EVO notified JAG that it had assigned to Copperwood all future payments for invoices due, and directed that JAG make such payments directly to Copperwood. (*Id.* ¶ 13; Dkt. No. 9-4 ("Ex. B") at 1). Subsequently, EVO provided services to JAG and "JAG Staffing, in turn, agreed to pay EVO $334,389 for those services." (Compl. ¶ 9). Copperwood subsequently demanded that JAG make payment, but JAG has refused. (*Id.* ¶¶ 14–15). This action followed.

# DISCUSSION

## I. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. *Trs. of the Leather Goods, Handbags, & Novelty Workers' Union Local 1 Joint Ret. Fund v. Cent. Fur Storage Co.*, No. 18-CV-7224 (AMD) (RER), 2019 WL 3937132, at *4 (E.D.N.Y. Aug. 2, 2019) (citing *Enron Oil Corp. v. Diakuhar*a, 10 F.3d 90, 95 (2d Cir. 1993)), *R & R adopted by* 2019 WL 3936676 (Aug. 20, 2019). First, the plaintiff must request an entry of default from the clerk of the court. FED. R. CIV. P. 55(a). If the clerk enters default against the non-responsive parties, the plaintiff must then move for a default judgment. FED. R. CIV. P. 55(b)(2).

Where, as here, the procedural requirements have been satisfied, the defaulting party is deemed to have admitted all well-pleaded factual allegations in the complaint. *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). The court must then decide whether the well-pleaded facts establish the defaulting party's liability as a matter of law. *Gesualdi v. Ava Shypula Testing & Inspection, Inc.*, No. 13-CV-1873 (DRH) (GRB), 2014 WL 1399417, at *4 (E.D.N.Y. Apr. 10, 2014).

Damages are assessed separately, and a plaintiff need only prove that the compensation sought "naturally flow[s] from the injuries pleaded." *Greyhound*, 973 F.2d at 159. Further, a plaintiff's recovery of damages must reflect what was requested in the pleadings. *See* FED. R. CIV. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); *see also Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007). If the court so chooses, an evidentiary hearing may be held to determine damages. FED. R. CIV. P.

55(b)(2). However, "it [is] not necessary for the District Court to hold a hearing, as long as it ensure[s] that there [is] a basis for the damages specified in a default judgment." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). In determining damages, the court may rely on "detailed affidavits and documentary evidence." *Id.*

## II. Choice of Law

As an initial matter, the Court must determine what law should be applied in this diversity case. Relying on a choice of law provision in the Receivables Sale Agreement, (Ex. A ¶ 12), Copperwood contends that Texas law applies, (Dkt. No. 9-1 ("Pl.'s Mem.") at 8 n.2). JAG, however, is not a party to the Receivables Sale Agreement and had no prior business relationship with Copperwood. While a non-signatory may be bound by the terms of a contract in certain circumstances,[1] Copperwood does not explain why JAG should be bound in this instance.

A federal district court sitting in diversity applies the substantive law of the forum state, including that state's choice of law rules. *In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012) (citing *Klaxon Co. v. Stenton Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496–97 (1941)). "Under the law of New York, the forum state, the first step in a choice of law analysis is to determine whether an actual conflict exists between the laws of the jurisdictions involved." *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012) (citations omitted). An actual conflict exists when there are "relevant substantive differences that could have a significant impact on the outcome of the case." *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 332 (2d Cir. 2005). If there is no conflict, then a federal court in New York should apply New York law. *See Alitalia Linee Aeree Italiane, S.p.A. v. Arline Tariff Publ'g Co.*, 580 F. Supp. 2d 285, 290 (S.D.N.Y. 2008*), quoted in Silverman & Silverman, LLP v. Pacifica Found.*, No. 11-CV-1894 (FB) (RML), 2015 WL 7118246, at *3 n. 2 (E.D.N.Y. Apr. 22, 2011), *R & R adopted by* 2015 WL 7158533 (Nov. 12, 2015). Here, there does not appear to be any conflict between the laws of New York and Texas with respect to breach of contract, unjust enrichment or the Uniform Commercial Code. Accordingly, the undersigned has applied New York law.

## III. Liability

### A. Breach of Contract and Unjust Enrichment

Plaintiff seeks damages based on the defendant's breach of its contracts with EVO—the failure to pay the amounts due under EVO's invoices. Under New York law, a party alleging a breach of contact must prove the following: "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *First Invests. Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998) (quoting *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994)). Plaintiff has established that EVO and JAG entered into a

---

[1] In *Arthur Andersen LLP v. Carlisle*, the Supreme Court held that state contract law provides the "traditional principles . . . [that] allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." 556 U.S. 624, 631 (2009) (citation omitted).

3

series of contracts, the invoices, in which it was agreed that EVO would supply specified services to JAG and JAG would pay an agreed upon price. Plaintiff has provided copies of invoices entered into between EVO and JAG between July 26, 2019 and September 25, 2019. (Dkt. No. 9-5 ("Ex. C")). Based on a review of the allegations in the Complaint, the invoices, which include a description of the services provided and price, and JAG's acknowledgments thereof, Plaintiff has established that a series of contracts existed between EVO and JAG. (Compl. ¶¶ 9, 15, 17, 19–21; Exs. B, C).

In addition, Copperwood alleged EVO duly performed its contractual obligations by timely delivering the services specified in the invoices; that the defendant materially breached the contracts by failing to pay the invoiced amounts; that EVO assigned to Copperwood its accounts receivable from JAG; and that Plaintiff has suffered actual damages. Accordingly, the Court finds that plaintiff has established its state law claim for breach of contract. *See, e.g.*, *Jiangsu Gtig Esen Co. v. Am. Fashion Network, LLC,* No. 5:20-CV-222, 2020 WL 3453643, at *4 (N.D.N.Y. June 24, 2020) (finding a plaintiff is entitled to default judgment on a breach of contract claim where its allegations established that it shipped and delivered a requested product pursuant to purchase orders and then issued invoices for the products requiring the defendants to pay, which they did not do); *Perfect Health LLC v. Danbury Pharma, LLC*, No. 17-CV-3640 (DRH) (ARL), 2018 WL 1403323, at *2 (E.D.N.Y. Feb. 27, 2018), *R & R adopted by* 2018 WL 1401802 (Mar. 20, 2018).

Cooperwood has also alleged a claim for unjust enrichment. However, New York law does not permit recovery under unjust enrichment where such claims are duplicative of a breach of contract claim and the court has determined that there is an enforceable contract that governs the same subject matter. *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 54 (2d Cir. 2011) ("The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement.") (collecting cases); *Cont'l Cas. Co. v. Contest Promotions NY, LLC*, No. 15-CV-501 (MKB), 2016 WL 1255726, at *3–*4 (E.D.N.Y. Mar. 28, 2016) (denying default judgment as to unjust enrichment claim upon finding that it was duplicative of breach of contract claim). Here, Plaintiff's unjust enrichment claim arises from the same factual allegations as the breach of contract claim. (Compl. ¶¶ 9, 15, 17, 19–27). As the Court has already found that Copperwood sufficiently pleaded existence of valid contracts through the acknowledged invoices and the breach thereof, the Court recommends that liability as to the unjust enrichment claim be denied. *See Perfect Health LLC v. Danbury Pharma, LLC*, No. 17-CV-3640 (DRH) (ARL), 2018 WL 1403323, at *2 (E.D.N.Y. Feb. 27, 2018) (citing *Ortho Sleep Prod., LLC v. Dreamy Mattress Corp.*, No. 11-CV-6049 (CBA) (CLP), 2012 WL 6621288, at *11 (E.D.N.Y. Aug. 29, 2012), *R & R adopted by* 2012 WL 6589208 (Dec. 17, 2012)) ("As the plaintiff has successfully stated a claim for breach of contract, the Court need not address the equitable claims of accounts stated and unjust enrichment."), *R & R adopted by* 2018 WL 1401802 (Mar. 20, 2018).

### B. UCC Claims

Copperwood brings three separate claims for violations of Article 9 of the UCC—

sections 9-318,[2] 9-406[3] and 9-607.[4] (Compl. ¶¶ 28–43). Candidly, Plaintiff admits that the courts are divided on whether there is a private right of action under either § 9-406 or § 9–607. (Pl.'s Mem. at 8–9 n.3, n.4).[5] Although not addressed by Copperwood, it is also questionable whether there is a private right of action under § 9-318. Regardless, the Court need not decide these issues of state law as it does not appear that the remedies available under any potential independent UCC cause of action would be different from the remedies Plaintiff seeks under its breach of contract claim—payment of the amount owed under the invoices. Accordingly, I respectfully recommend that default judgment on Plaintiff's UCC claims be denied, and those claims be dismissed without prejudice. *See Prosperity Funding, Inc. v. Act 1 Grp., Inc.,* No. CV 18-03692, 2020 WL 1652346, *8 (C.D. Cal. Feb. 12, 2020) (declining to decide whether California's UCC section 9-406 provides independent cause of action where remedies available for breach of contract claim were identical); *ARA Inc. v. City of Glendale*, 360 F. Supp. 3d 957, 971 (D. Ariz. 2019) (declining to decide whether Arizona's UCC sections 9-406 and 9-407 provide independent causes of action where remedies available for plaintiff's breach of contract claim were identical); *cf. J. Kings Food Serv. Pros., Inc. v. Navin Bros. Food Serv., Inc.*, No. 17-CV-5472 (JFB) (SIL), 2018 WL

---

[2] Section 9-318, provides:

(a) Seller retains no interest. A debtor that has sold an account, chattel paper, payment intangible, or promissory note does not retain a legal or equitable interest in the collateral sold.

(b) Deemed rights of debtor if buyer's security interest unperfected. For purposes of determining the rights of creditors of, and purchasers for value of an account or chattel paper from, a debtor that has sold an account or chattel paper, while the buyer's security interest is unperfected, the debtor is deemed to have rights and title to the account or chattel paper identical to those the debtor sold.

N.Y. U.C.C. § 9-318.

[3] Section 9-406 provides in relevant part that "an account debtor on an account, chattel paper, or a payment intangible may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee. After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor."

N.Y. U.C.C. § 9-406(a).

[4] Under § 9-607, "after default, a secured party: (1) may notify an account debtor or other person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party," and "(3) may enforce the obligations of an account debtor or other person obligated on collateral and exercise the rights of the debtor with respect to the obligation of the account debtor or other person obligated on collateral to make payment or otherwise render performance to the debtor."

N.Y. U.C.C. § 9-607(a)(1), (3).

[5] *Compare, e.g.*, *Forest Cap., LLC v. BlackRock, Inc.*, 658 Fed. App'x 675, 678 (4th Cir. 2016) (finding no private right of action under Maryland's UCC sections 9-406 and 9-607), *ARA, Inc. v. Waste Mgmt. Nat'l Servs., Inc.*, No. 17-159, 2017 WL 4857428, at *4 (D. Minn. Oct. 25, 2017) ("[Section] 9-406 does not create a private right of action for the assignee."), *vacated by stipulated dismissal*, 2018 WL 1737277 (Feb. 13, 2018), *and Integrity Factoring & Consulting, Inc v. Triple S Materials, L.P.*, No. 5:16-CV-885, 2017 WL 8020218, at *4 (W.D. Tex. Nov. 20, 2017) (finding no private right of action under Texas's section 9.406), *with United Cap. Funding Corp. v. Ericsson, Inc.*, No. C15-0194JLR, 2018 WL 3619633, at *6 (W.D. Wash. July 30, 2018) (finding Washington's UCC section 9-406 provides a private cause of action).

5

4443130, *3 n.3 (E.D.N.Y. Aug. 15, 2018) (on default, recommending dismissal of UCC claim as duplicative of breach of contract claim), *R & R adopted by* 2018 WL 4409837 (Sept. 13, 2018); *Glob. Drilling Suppliers, Inc. v. Pier Tech, Inc.*, 13-CV-1106 (JFB) (SIL) 2018 WL 3599215, at *2 n.5 (E.D.N.Y. June 27, 2018) (similar), *R & R adopted by* 2018 WL 3597503 (July 25, 2018).

### IV. Damages

In determining damages in default, courts do not accept a plaintiff's allegations at face value. *Transatlantic Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). While Rule 55(b)(2) allows for a hearing, the Second Circuit has held that hearings are unnecessary if there is some basis in the plaintiff's documentation for the damages sought. *Id.*; *see* FED. R. CIV. P. 55(b). Examples of proper documentation for damages include detailed affidavits and other documentary evidence. *See Transatlantic*, 109 F.3d at 111 (citing *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993)).

#### A. Unpaid Invoices

Given the detailed business records Copperwood has submitted with its motion, including invoices, acknowledgments thereof, and the affidavit in support of those records, (Dkt. No. 9-2 ("Donahue Aff."); Exs. B, C), I find that a hearing to determine damages is not necessary. With one minor exception, JAG's acknowledgements of EVO's invoices establish that Copperwood is entitled to the damages it seeks. Copperwood has submitted all such invoices and acknowledgements except for invoice 1218 for $19,400, dated August 19, 2019. (Ex. B at 11). No acknowledgment from JAG appears in the record. Upon a calculation of all acknowledged EVO invoices, JAG clearly owes Copperwood $314,989 in damages (Exs. B, C; Donahue Aff. ¶ 16), and I respectfully recommend it be awarded damages in that amount. *See First Bank & Tr. v. Coventina Constr. Corp.*, No. 18-CV-6648 (NGG) (VMS), 2019 WL 4120363, at *7 (E.D.N.Y. July 23, 2019) (finding damages sought were supported where plaintiff provided copies of unpaid invoices, defendants' emails approving those invoices, and an "affidavit attesting that those invoices are unpaid."), *R & R adopted by* 2019 WL 4089393 (Aug. 26, 2019); *Glob. Drilling*, 2018 WL 3599215, at *4 (finding damages sought were supported where plaintiff provided copies of the invoices, statements summarizing the invoices and payments received, and a supplemental affidavit).

#### B. Pre-Judgment Interest

Copperwood also seeks pre-judgment interest on its claims. "It is well settled that state law applies to an award of prejudgment interest in a diversity action in federal court." *Palco Telecom Serv., Inc. v. Global Warranty Grp.*, LLC, No. 14-CV-4818 (ADS) (SIL), 2015 WL 10793120, at *3 (E.D.N.Y. Aug. 17, 2015), *R & R adopted by* 2015 WL 7459922 (Nov. 24, 2015); *see also Four H Fashions, Ltd. v. Russell Newman Brands, LLC*, No. 11 Civ. 4669 (LTS), 2011 WL 6091548, at *2 n.1 (S.D.N.Y. Dec. 6, 2011) ("In a diversity case, prejudgment interest is controlled by the rule of the jurisdiction whose law determines liability.").

"Under New York law, a plaintiff that prevails on a claim for breach of contract is entitled, as a matter of right, to prejudgment interest from the date of breach until the entry of final judgment." *Capital One, N.A. v. Auto Gallery Motors, LLC*, 16-CV-6534 (PKC) (SIL), 2020 WL 423422, at *6 (E.D.N.Y. Jan. 27, 2020) (quoting *Boyce v. Soundview Tech. Grp., Inc.*, No. 03 Civ. 2159 (HB), 2005 WL 627780, at *2 (S.D.N.Y. Mar. 17, 2005)); *see*

*also* N.Y. C.P.L.R. § 5001(a). When the contract itself does not specify the interest, the statutory rate of 9% per annum under N.Y. C.P.L.R. § 5004 applies, *c.f. J. D'Addario & Co., Inc. v. Embassy Indus., Inc.*, 20 N.Y.3d 113, 117–19 (2012) ("The contract language will always control."), and the amount of interest is computed on a simple, as opposed to compound, basis, *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998) (collecting cases). "[W]here damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc.*, 577 F. App'x 58, 61 (2d Cir. 2014) (summary order) (quotation marks and alterations omitted) (quoting *U.S. Fid. & Gaur. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 78 (2d Cir. 2004)); *see also* N.Y. C.P.L.R. § 5001(b).

Accordingly, this Court respectfully recommends that Plaintiff be awarded pre-judgment interest at a per diem rate of $77.67[6] to run from October 24, 2019[7] to the date of judgment.

### C. Costs

"Unless federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). Here, Plaintiff seeks $400 in costs for the filing fee. (Dkt. No. 9-6 ¶ 11). Although Plaintiff did not submit any evidence of having incurred this cost, the Court may take judicial notice of the District's filing fee. *See, e.g.*, *Joe Hand Promotions, Inc. v. Elmore*, No. 11-CV-3761 (KAM) (SMG), 2013 WL 2352855, at *12 (E.D.N.Y. May 29, 2013). Therefore, I respectfully recommend that Plaintiff be awarded costs in the requested amount. (*See* Dkt. No. 1 Entry dated 3/16/2020, noting "filing fee $ 400, receipt number BNYEDC-12545723").

### CONCLUSION

For the foregoing reasons, I respectfully recommend that Your Honor grant Plaintiff's motion for default judgment in part. Judgment should be entered on Plaintiff's breach of contract claim for $314,989 in damages, $77.67 in per diem prejudgment interest from October 24, 2019 to the date of judgment, $400 in costs, and post-judgment interest calculated by the Clerk of the Court pursuant to 28 U.S.C. § 1961. The remainder of the claims should be dismissed without prejudice.

Plaintiff's counsel is hereby directed to serve copies of this Report and Recommendation upon Defendant by regular and certified mail and to file proof of service with the Clerk of the Court. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Eric Komitee within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED

/s/ Ramon E. Reyes, Jr.

RAMON E. REYES, JR.
U.S. Magistrate Judge
Dated: February 10, 2021

---

[6] $314,989 X .09/365 = $77.67.

[7] Each invoice required payment within sixty days. (Ex. C). October 24, 2019 is the intermediate date within the range of when payments should have been made – September 24, 2019 to November 24, 2019.